IN THE UNITED STATES COURT OF APPEALS
TENrH CIRCUIT

APPEAL NO. 20-3126

MATHEW R. WURM,                      )
      Plaintiff/Appellants,        )
                         )
     vs.                             )
                         )
FORD MOTOR COMPANY,                  )
       Defendant/Appellant.         )
_____)

Appeal from the United States District Court
for the District of Kansas at Kansas City, Kansas

The Honorable Holly L. Teeter, U.S. District Judge
District Docket Case No.: 2:18-cv-02322-HLT

## <u>BRIEF OF APPELLANT</u>

**ORAL ARGUMENT IS REQUESTED**
**THIS BRIEF CONTAINS ATTACHMENTS IN DIGITAL FORM**

Respectfully submitted,

Eric Kjorlie, KS #08065
Kjorlie Law Office
Historic Tinkham Veale Place
827 SW Topeka Blvd.
Topeka, KS 66612-1608
(785)232-6868 (O); (785)232-6878 (F)
kjorlielaw@sbcglobal.net
Counsel for Plaintiff/Appellant

Appellate Case: 20-3126   Document: 01011042120   Date Filed: 10/09/2020   Page: 2

# CERTIFICATE OF INTERESTED PERSONS

I certify that the following individuals may have an interest in the outcome of this case. I make these representations in order that the members of this Court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **District Judge:** | The Honorable Holly L. Teeter |
| **Appellants:** | Mathew R. Wurm |
| **Appellants' Counsel:** | Eric Kjorlie |
| **Appellee:** | Ford Motor Company, A Delaware Corporation |
| **Appellees' Counsel:** | Theresa Wardon Benz<br>Kristen Leigh Ferries<br>Wheeler, Trigg, O'Donnell, LLP |

i

Appellate Case: 20-3126     Document: 010110421120     Date Filed: 10/09/2020     Page: 3

# **PRIOR OR RELATED APPEALS**

Pursuant to 10 Cir. R. 28.2(C)(3) there have been no prior or related appeals.

Appellate Case: 20-3126     Document: 010110421120     Date Filed: 10/09/2020     Page: 4

# **STATEMENT OF JURISDICTION**

Appellant timely filed his Notice of Appeal on July 1, 2020 within thirty

(30) days pursuant to Fed. R. App. P. 4(a)(4)(A) from the Memorandum and Order

denying Plaintiff's Motion for Consideration, and Motion for New Trial entered on June

1, 2020. The Plaintiff takes his appeal pursuant to 28 U.S.C. § 1291. Plaintiff /Appellant

is a resident of Kansas. Defendant/Appellee is a Delaware Corporation with its principal

place of business at Dearborn, Michigan.

## RULE 32(a)(7) CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. of App. P. 32(a)(7)(C), I, Eric Kjorlie, Counsel for the Plaintiffs, hereby certify that the Appellant's Brief, is in conformity with this Rule as required to type-volume limitation containing no more than 14,000 words. I relied upon Microsoft Word to obtain the count and it is 5,796 words, and pursuant to 10th Circuit's Rule Cir. R. 32.1, the text of Appellant's Brief is 13 pt. type permitted by Fed. R. App. P. 32 (a)(5)(A). I certify that the information of this form is true and correct to the best of my knowledge and belief formed after reasonable inquiry.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES.........................................i

PRIOR OR RELATED APPEALS.................................................ii

RULE 32(a) (7) CERTIFICATE OF COMPLIANCE ...........................iii

CERTIFICATE OF DIGITAL SUBMISSION ....................................21

TABLE OF AUTHORITIES.......... ..............................................iv

APPENDIX ADDENDUM/SUPPLEMENTAL ATTACHEMENTS
TO BRIEF...........................................................................22

I. PLAINTIFFS'/APPELLANTS' INTRODUCTION/OVERVIEW
 OF ISSUES RAISED IN THE INSTANT APPEAL.............................1

II. STATEMENT OF ISSUES PRESENTED FOR REVIEW....................3

  I.      Because Defendant's Motions to Exclude Plaintiff's Expert Testimony/
          "Daubert" of Plaintiff's Designated Experts Parcells (ROA Appellant's
          Appendix, Vol. 1, Page A0075)  and McLellan (ROA Appellant's
          Appendix, Vol. 2, Page A0365)  in actually attacking the sufficiency of
          the evidence supporting their opinions and not whether the evidence on
          which the experts relied was admissible the Plaintiff presents
          information for the Court's further review of their competency to
          provide certain opinion testimony concerning "pattern of injury" to
          support roof crush injury to the Plaintiff (Parcells) as a Anatomist and
          not required in his forming opinions of injury causation by being a
          member of an engineering biomechanics/occupant kinematics specialist;
          or (McLellan) opinions as an automotive engineer of unsafe design of the
          subject roof structure of the Defendant's truck for its rear seat
          occupants or its failure to comply with the minimum  Federal Motor
          Vehicle Safety Standard (FMVSS) 216 (5 inches as opposed to 15-18
          inches of roof crush present after vehicle rollover) rendering the roof
          structure of the truck unsafe and dangerous requiring further a common
          law Kansas duty to warn post-sale of a known dangerous
          condition/liability with punitive damages. .........................14

II.    The standard of appellate review of these issues raised on appeal by the Plaintiff/Appellant is that the federal district court abuses its discretion when its ruling is "arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Dodge v. Cotter Corp.*,328 F.3d 1212, 1223 (10th Cir. 2003) (quotations omitted); and that a determination is made on appeal that specific findings on the record exist supporting its ruling to admit or exclude expert evidence which are required by the federal district court so that reviewing courts on appeal may "determine whether it applied the relevant law and properly performed its gatekeeping function." *Burlington Northern and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013 (10th Cir. 2007). ………………………………………………..11

III. STATEMENT OF JURISDICTION………………………………………..11

IV. APPELLANT'S FACTUAL CONTENTIONS …………………………....12

V. ARGUMENTS AND AUTHORITIES …………………………….....14&19

VI. CONCLUSION ………………………………………………...........20

VII. STATEMENT REGARDING ORAL ARGUMENT ……………....…..21

CERTIFICATE OF SERVICE AND DIGITAL SUBMISSION…………..…..22

APPENDIX ADDENDUM/SUPPLEMENTAL ATTACHEMENTS TO BRIEF

1. Exhibit "A"- Memorandum and Order (Doc. 101), filed 04/01/2020 granting Defendant's Daubert Motions and Defendant's Motion for Summary Judgment.

2. Exhibit "B"- Memorandum and Order (Doc. 109), filed 06/01/2020 denying Plaintiffs' Rule 59(e)Motion to Reconsider and Plaintiffs' Rule 60(b) Motion for New Trial.

3. Exhibit "C"- Photo of damaged Vehicle post-accident.

4. Exhibit "D"- Photo of damaged Vehicle post-accident.

5. Exhibit "E"- Exponent 2005 Horizontal Platen Roof Crush Test.

6. Exhibit "F"- cross-section diagram of B-pillar to vehicle's roof with feasible corrective Design to structural component.

7. Exhibit "G"- Working sketch for strengthening cross-section of B-pillar to vehicle's roof.

8. Exhibit "H"- Photo of scalp wound to rear seat occupant-"pattern of injury".

9. Exhibit "I"- Text book excerpt "Forensic Epidemiology-Principles and Practice"-Chapter 12 "Traffic Injury Investigation: Product Defects" – Study #2: Roof Crush-Related Neck Injury Risk Analysis.

10. Exhibit "J"- Parcells' Transcript- Master of Science in Human Anatomy and Physiology Instruction.

11. Exhibit "K"- Unpublished Kansas Court of Appeals Decision in *Grey vs. City of Topeka*---Kansas common law duty to warn of latent dangerous conditions.

# TABLE OF AUTHORITIES

CASES:

*Ashby v. McKenna*, 331 F.3d 1148, 1149 (10th Cir. 2003) …………………………16

*Bitler v. A.O. Smith Corp.*, 400 F. 3d 1227 (10th Cir. 2004)……………………......8

*Burlington Northern and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013 (10th Cir. 2007) …………………………………………………………18

*Cummings v. General Motors Corporation*, 365 F. 3d 944 (10th Cir. 2004)………..7

*Daubert v. Merrell Dow Pharmaceuticals, Inc*, 509 U.S. 579, 590-93 (1993)……4,5

*Delaney v. Deere Co.*, 268 Kan. 769, 772-73, 999 P.2d 930, 934-35 (2000) …...6,15

*Deines v. Vermeer Mfg. Co.*,752 F. Supp. 989, 995 (Kan. 1990)........................6

*Garst v. Gen. Motors Corp.,* 207 Kan. 2, 19, 484 P.2d 47, 60 (1971)..................6

*Hinkle v. Ford Motor Company,* No. 3:11–24–DCR, 2012 WL 5868899
(E.D. Ky. Nov. 20, 2012)..........................................................................7

*Jenkins v. Amchem Prods., Inc.,* 256 Kan. 602, 630, 886 P.2d 869, 886
(1994) (quoting *Mays v. CIBA-Geigy Corp.,* 233 Kan. 38, 54,
661 P.2d 348, 360  (1983))..............................................................6,7,10,15

*Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)..........................4,5
  Page: 3,4

*Mays v. CIBA-Geigy Corp.*, 233 Kan. 38, 54, 661 P.2d 348, 360 (1983)........6,7,15

*McCoy v. Whirlpool Corp.* No. 02-2064-KHV, Consolidated with: Nos.
02-2229-KHV, 02-2230-KHV, 02-2231-KHV (D. Kan. Jul. 8, 2003)..............6

*McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)......17

*Miller v. Countrywide Bank,* N.A., 708 F.3d 704, 707 (6th Cir. 2013)..............16

*Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 756, 861 P.2d
1299, 1311 (1993)..............................................................................6,15

*St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405
(5th Cir. 2000)............................................................

*United States v. 14.38 Acres of Land, More or Less Situated in Leflore
Cty., State of Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996)............ ..................5

*Zoch v. Daimler, A.G.,* Civil Action No. 4:17-CV-578 (E.D. Tex. Sep.
25, 2018)....................................................................................9

REULATIONS:

Federal Motor Vehicle Safety Standard (FMVSS) 216.................................3

RULES:

Fed. R. App. P. 4(a)(4)(A)……………………………………….......11

Fed. R. Evid. 702………………………………………………....4

STATUTES:

28 U.S.C. §1291……………………………………….......................11

PATTERN INSTRUCTIONS:

State of Kansas "*Expert Witness Jury Instruction*" *PIK 4th 102.50*………………..9

Appellate Case: 20-3126    Document: 010110421120    Date Filed: 10/09/2020    Page: 11

## <u>PLAINTIFF'S/APPELLANT'S INTRODUCTION/ OVERVIEW OF ISSUES RAISED IN THE INSTANT APPEAL</u>
### <u>Plaintiff's Statement of the Case/Overview</u>

The Plaintiff/Appellant, by and through his Counsel Eric Kjorlie, respectfully appeals to this Honorable Tenth Circuit Court of Appeals the Honorable U.S. District Court's decision , the Honorable U.S. District Judge Holly L. Teeter presiding, determining that his retained experts were unqualified under Daubert to testify to the Jury their opinions that Ford's subject 1999 Ford F-250 Super Cab's roof structure was defective and unreasonably dangerous when the product's roof structure buckled and intruded into the rear occupant cabin space during a rollover event in Osage County, Kansas on June 18, 2016 resulting of Plaintiff's personal injuries to his spine. Plaintiff's designated automotive engineering expert, is Dave McLellan, a former Chief Engineer for General Motors/Corvette and designated by the American Society of Automotive Engineers International (SAE) as a Fellow which is the highest grade of membership bestowed on an individual in recognition of his recognized outstanding engineering and scientific accomplishments which has resulted in meaningful advances in automotive, aerospace and commercial-vehicle technology. Only eighteen (18) SAE International members out of 138,000 members were selected for Fellow membership in 2020. Mr. McLellan has determined and proffered to the Court that Defendant's product 1999 Ford F-250 Super

Cab's roof structure was defective and unreasonably dangerous under Kansas Law. Plaintiff's designated "pattern of injury" expert Shawn L. Parcells, an Anatomist, holds a Master's Degree in Human Anatomy and Physiology Instruction and has 3 years' experience as an Adjunct Instructor teaching medical students in anatomy and physiology at the Kansas City University of Medicine and Biosciences.  Mr. Parcells has determined and proffered to the Court that the pattern of injury is consistent with a roof crush type injury as opposed to Ford's claim that Plaintiff either belted or unbelted sustained his injuries as a result of his catapulting or diving into the roof structure during the rollover event and the roof structure's integrity was not defective or dangerous and did not cause Plaintiff's alleged injuries during this rollover event. The Court determined under Daubert that Mr. Parcells was not qualified to render an opinion on causation through a medical opinion as to the rear seat occupants

Accordingly U.S. District Judge Teeters denied Plaintiff's Fed. R. Civ. P. 59(a)(1)(2) and (e) Motion for New Trial and to Alter, Set Aside, or Amend the Court's Summary Judgement entitled "Memorandum and Order"; Court's "Memorandum and Order", entered on June 1, 2020 determining that the Court's Daubert's rulings were in accordance with law and that no clear error existed in order to prevent manifest injustice. The Appellant timely filed his Notice of Appeal on July 1, 2020.

## Plaintiff's/Appellant's Statement of Issues on Appeal

I.     Because Defendant's Motions to Exclude Plaintiff's Expert Testimony/ "Daubert" of Plaintiff's Designated Experts Parcells (ROA Appellant's Appendix, Vol. 1, Page A0075) and McLellan (ROA Appellant's Appendix, Vol. 2, Page A0365) in actually attacking the sufficiency of the evidence supporting their opinions and not whether the evidence on which the experts relied was admissible the Plaintiff presents information for the Court's further review of their competency to provide certain opinion testimony concerning "pattern of injury" to support roof crush injury to the Plaintiff (Parcells) as a Anatomist and not required in his forming opinions of injury causation by being a member of an engineering biomechanics/occupant kinematics specialist; or (McLellan) opinions as an automotive engineer of unsafe design of the subject roof structure of the Defendant's truck for its rear seat occupants or its failure to comply with the minimum  Federal Motor Vehicle Safety Standard (FMVSS) 216 (5 inches as opposed to 15-18 inches of roof crush present after vehicle rollover) rendering the roof structure of the truck unsafe and dangerous requiring further a common law Kansas duty to warn post-sale of a known dangerous condition/liability with punitive damages.

II.     The standard of appellate review of these issues raised on appeal by the Plaintiff/Appellant is that the federal district court abuses its discretion when its ruling is "arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Dodge v. Cotter Corp.,* 328 F.3d 1212, 1223 (10th Cir. 2003) (quotations omitted); and that a determination is made on appeal that specific findings on the record exist supporting its ruling to admit or exclude expert evidence which are required by the federal district court so that reviewing courts on appeal may "determine whether it applied the relevant law and properly performed its gatekeeping function." *Burlington Northern and Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013 (10th Cir. 2007).

## Standard of Review

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590-93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590-91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." Fed. R. of Evid. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." (*Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating

the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id*. at 593-94. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id*. at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id*. at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted). Despite this discretion, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996) (quoting *Daubert*, 509 U.S. at 595).

In *McCoy v. Whirlpool Corp.* CIVIL ACTION No. 02-2064-KHV, Consolidated with: Nos. 02-2229-KHV, 02-2230-KHV, 02-2231-KHV (D. Kan. Jul. 8, 2003), Judge Vratil states:

"Under Kansas law, the KPLA governs all product liability claims. The underlying purpose of the KPLA is "to consolidate all product liability actions, regardless of theory, into one theory of legal liability. "*Patton v. Hutchinson Wil-Rich Mfg. Co.*, 253 Kan. 741, 756, 861 P.2d 1299, 1311 (1993). To present a prima facie strict liability case, plaintiffs must produce evidence to establish three elements: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left defendants' control. *Jenkins v. Amchem Prods., Inc.*, 256 Kan. 602, 630, 886 P.2d 869, 886 (1994) (quoting *Mays v. CIBA-Geigy Corp.*, 233 Kan. 38, 54, 661 P.2d 348, 360 (1983)).

Under Kansas law, a manufacturer has a duty to use reasonable care in designing its products so that they will be reasonably safe for their intended use. *Deines v. Vermeer Mfg. Co.* 752 F. Supp. 989, 995 (Kan. 1990) (citing *Garst v. Gen. Motors Corp.,* 207 Kan. 2, 19, 484 P.2d 47, 60 (1971)). Kansas has adopted the consumer expectations test as the standard for design defects. See *Delaney v. Deere Co.,* 268 Kan. 769, 772-73, 999 P.2d 930, 934-35 (2000). Kansas courts require "that the product be both defective and unreasonably dangerous." *Jenkins,* 256 Kan. at 630, 886 P.2d at 886. Under Kansas law, a "defective condition" is defined as "a condition which is unreasonably dangerous to the ordinary user" and "unreasonably dangerous" is defined as dangerous when used in the

6

way it is ordinarily used considering the product's characteristics and common usage, and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics. Id. at 635, 886 P.2d at 889.

A. Specific Defect

The elements of a product liability claim "may be proven inferentially, by either direct or circumstantial evidence." *Mays*, 233 Kan. at 54, 661 P.2d at 360. Nevertheless, generalized assertions that a product is defective are insufficient; plaintiffs must establish the existence of a specific defect to prevail on a defective product claim. *Jenkins*, 256 Kan. at 635, 886 P.2d at 889. If plaintiffs seek to prove their claim with circumstantial evidence, that evidence "must tend to negate other reasonable causes, or there must be an expert opinion that the product was defective." Id. Indeed, "[b]ecause liability in a products liability action cannot be based on mere speculation, guess or conjecture, the circumstances shown must justify an inference of probability as distinguished from mere possibility." *Mays*, 233 Kan. at 52, 661 P.2d at 359; *Jenkins*, 256 Kan. at 634-35, 886 P.2d at 889 ("either a design defect or a manufacturing defect can be proven by circumstantial evidence")."

**Plaintiff's Statement of Applicable Law**

Plaintiff respectfully shows the court that "pattern of injury" should be considered to be approved by the Court to be viable method of proof as to mechanics of injury due to

7

the products failure in this instant case. *Cummings v. General Motors Corporation*, 365 F. 3d 944 (10th Cir. 2004) is a case supportive of pattern of injury where a mispositioned seat defense resulted in a pattern of injury showing resulting in a front seat passenger's back compression fracture resulting in paraplegia which was consistent with Defendant General Motors Corporation's theory of causation. And surprisingly the Plaintiff draws the court's attention to an opinion provided by the Defendant in another products case concerning "pattern of injury" of an experienced "forensic" "biomechanics occupant kinematics" expert allowed to testify in the current case litigation. For instance on this point the case summary of Ford's designated biomechanics expert Catherine Corrigan in *Hinkle v. Ford Motor Company*, No. 3:11–24–DCR, 2012 WL 5868899 (E.D. Ky. Nov. 20, 2012) the Trial Court for the District of Kentucky in dealing with the admissibility of testimony of Ford's Human Factors Expert, Catherine Corrigan the issue of Ford's pattern of injury defense (Seatbelt worn under the arm issue- without apparent "seatbelt sign") to the injured occupants body was determined to be of a relevant inquiry sufficient to withstand a Daubert challenge.

The Plaintiff further shows the Court that if the expert is not qualified to testify in the relevant field (here ladder design), that the expert should obviously not be permitted to testify to matters in the "relevant field" of ladder design. [Plaintiff respectfully submits in arguendo that in the Tabor case had there been a "pattern of injury such as identifiable bruising to the injured person's body would be sufficient to show that the alleged defective ladder in design was the cause or result of the bruising injury absent this particular plaintiff's recollection as to how the injury occurred that the causation factor might have

8

allowed the case to go forward if such were shown.] Also, in *Bitler v. A.O. Smith Corp.*,

400 F. 3d 1227 (10th Cir. 2004), the Court in *Tabor*, supra notes:

> "…whether the proposed expert testimony is reliable and relevant, in that it will assist the trier of fact.
>
> 8.     Under Daubert, the district court determines the reliability of proposed scientific testimony by looking to factors such as: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance.
>
> 9.     To the extent an expert witness is relying primarily on experience rather than on scientific methodology, he or she must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."

In this regard the Plaintiff further wishes to provide the Court with the State of

Kansas *"Expert Witness Jury Instruction" PIK 4th 102.50"* (ROA Appellant's Appendix,

Vol. 12, Page A1548) to provide that an individual who may have an expertise in the field

may not have the credentials of another who is permitted to testify but the jury in that

circumstance must review the testimony and considerate as to what weight or credit the

jury would allow based upon their community evaluation of its importance.

Certain Daubert rulings further note that in *Zoch v. Daimler, A.G.,* Civil Action

No. 4:17-CV-578 (E.D. Tex. Sep. 25, 2018) the Court there determined, in part:

> *Riley v. Ford Motor Co.*, 2:09-CV-148-KS-MTP, 2011 WL 2728266, at *6 (S.D. Miss. July 12, 2011) (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 990 (5th Cir. 1997)) (an expert's "failure to test the alternative design is not, by itself, sufficient to bar his testimony."; and

> This testing need not entail actually constructing a model[,] . . . testing can be as simple as applying math and physics to establish the viability of a design."

*Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 407 (5th Cir. 2016); *see also Sanchez*, 997 S.W.2d at 592 (qualified expert testimony on the issue suffices, even though the expert has produced no prototype, if it reasonably supports the conclusion that a reasonable alternative design could have been practically adopted at the time of sale); and

      If Defendants believe the above testing and explanation are inadequate, they should demonstrate so on cross-examination of Mr. Herbst. *See Daubert*, 509 U.S. at 595.

In a duty to warn Kansas Case *Jenkins v. Amchen*, 256 Kan. 602, 886 P.2d 869 (1994) the facts in this case post-sale rise above Kansas consumer law when a failure to warn of a dangerous condition surfaces and may readily be distinguished from the labeling situation under a product warning/i.e. strict liability duty to warn , to-wit:

      "[A] state common-law duty to warn is nothing more than a duty to label a product to provide information. In that sense, the common-law duty is no less a `requirement' in the preemption scheme than a state statute imposing the same burden. The objectives of the common-law duty and a regulatory statute are the same. Both address a manufacturer's duty to convey information about a product through the medium of a label. That a common-law action can result in an award of damages to an injured party does not detract from the ultimate purpose of imposing a duty to warn the users of a product about its potential dangers or other properties. Therefore, we believe it only logical to hold that the common-law duty to warn is subjected to the same federal preemptive constraints as a state statute." 981 F.2d at 1179.

Plaintiff/Appellant has a litigable issue post-sale factually and should be permitted at this juncture to proceed on his common law post-sale duty to warn.

Plaintiff/Appellant further shows the additional comment in where discretion has included admissibility of expert testimony as not being an abuse of discretion:

      ""[T]he district court must … function as a gatekeeper who 'separates expert opinion evidence based on good grounds from subjective speculation that masquerades as scientific knowledge.' " *Presley*, 553 F.3d at 643 (quoting *Glastetter v. Novartis Pharm.*

*Corp.*, 252 F.3d 986, 989 (8th Cir. 2001)). However, Stilson's opinion as to causation need not be a "scientific absolute in order to be admissible." *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). We conclude that Stilson's opinions represented more than "vague theorizing based on general principles," *Pro Serv. Auto., LLC v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2006), or "unsupported speculation," *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. The district court did not abuse its broad discretion in allowing Stilson's expert opinion pursuant to Rule 702.

**II.  The standard of appellate review of these issues raised on appeal by the Plaintiff/Appellant is that the federal district court abuses its discretion when its ruling is "arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) (quotations omitted); and that a determination is made on appeal that specific findings on the record exist supporting its ruling to admit or exclude expert evidence which are required by the federal district court so that reviewing courts on appeal may "determine whether it applied the relevant law and properly performed its gatekeeping function."  *Burlington Northern and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013 (10th Cir. 2007).**

## III.

## STATEMENT OF JURISDICTION

Appellant timely filed his Notice of Appeal on July 1, 2020 within thirty

(30) days pursuant to Fed. R. App. P. 4(a)(4)(A) from the Memorandum and Order

denying Plaintiff's Motion for Consideration, and Motion for New Trial entered on June

1, 2020. The Plaintiff takes his appeal pursuant to 28 U.S.C. § 1291.  Plaintiff /Appellant

is a resident of Kansas. Defendant/Appellee is a Delaware Corporation with its principal

place of business at Dearborn, Michigan.

# IV.

## **APPELLANT'S FACTUAL STATEMENT**

The Plaintiff /Appellant in his Complaint at Paragraph 3 (ROA Appellant's Appendix, Vol. 1, Page A0016) alleged in part that the Defendant Ford Motor Company having actual knowledge of the alleged latent defect Ford's subject 1999 Ford F-250 Super Cab's roof structure was defective and unreasonably dangerous post-sale when it became aware that the roof would catastrophically collapse inward (Appellant's Opening Brief -Appendix "E" and "F"), endangering passengers in the rear seat of the vehicle; and that this post-sale duty to warn occurred in an Exponent horizontal platen roof crush test that occurred on August 31, 2005. (ROA Appellant's Appendix, Vol. 1, Page A0075) (Appellant's Opening Brief -Appendix "E"),

In Plaintiff's/ Appellants Daubert Response to his Expert, Dave McLellan, Plaintiffs automotive engineer expert the 2005 Exponent Test revealed similar damage that occurred in the rollover to his vehicle that he was a passenger, and which occurred in Osage County, Kansas on June 18, 2016. (ROA Appellant's Appendix, Vol. 10, Pages A1171-A1182) ( Appellant's Opening Brief -Appendix "C")

Dave McLellan provided his Expert Report (ROA Appellant's Appendix, Vol. 10, Pages A1210-A1227) which contained all his conclusions and opinions requested by the Defendant. (ROA Appellant's Appendix, Vol. 10, Pages A1228). Additionally Mr. McLellan provided his professional Resume. (ROA Appellant's Appendix, Vol. 10, Pages A1210-1227). Mr. McLellan opined that the B pillar in the vehicle's roof

structure wasn't adequately designed, it had cargo lamps and other conditions with adhesive that created a lack of structural integrity at this location in the roof and it was defective and dangerous and a simple reinforcement could be readily installed to correct this dangerous condition as an automotive engineering solution (ROA Appellant's Appendix, Vol. 10, Page 1224) ( Appellant's Opening Brief -Appendix "G" and "H") based upon his experience and training in the field of automotive engineering. (ROA Appellant's Appendix, Vol. 10, Pages A1171-A1182)

Shawn Parcells provided his Expert Report (ROA Appellant's Appendix, Vol. 9, Pages 1106-1116) and his professional Resume. (ROA Appellant's Appendix, Vol. 10, Pages A1165-1082). In addition, Mr. Parcells provided a treatise to support the scientific literature in a textbook entitled "Forensic Epidemiology, Principles and Practice" that devoted a full chapter to the mechanism of injury in vehicular roof collapsing with the conclusion that the scientific literature supports that injuries from rollover accidents determined that roof crush was the precipitating factor of injury as opposed to diving (ROA Appellant's Appendix, Vol. 8, Pages A1003-A1012). In further support concerning "pattern of injury" Mr. Parcells reviewed a picture of one of the rear seat passengers, who sustained a scalping injury to the back of his head which would not support a conclusion that this individual was thrown into the roof by a diving mechanism as opined by the Defendant's experts. ( Appellant's Opening Brief -Appendix "J".)   In addition, Mr. Parcells has for three (3) years taught medical in the field of anatomy/pathology and has a Master's Degree in Human

13

Anatomy and Physiology. (ROA Appellant's Appendix, Vol. 13, Page A1663) and

(Appellant's Opening Brief -Appendix "K".)

Plaintiff/Appellant as above noted in Paragraph Three (3) of his Complaint has

pled a common law cause of action against Ford for its failure to warn post-sale and

under Kansas law is not to be intertwined with the consumer transaction notices of a

manufacturer given at time that the product leaves its control within the Kansas

consumer protection law.  See attached Mandate and unpublished decision in *Grey vs.*

*City of Topeka, et al.*, State of Kansas Court of Appeals, Appellate No. 117,652

decided Nov. 30, 2018  in support of the proposition that common law failure to warn

of a known latent dangerous condition is actionable in Kansas.  (Appellant's Opening

Brief -Appendix "M".)

**V.**

**ARGUMENTS AND AUTHORITIES**

I.  **Plaintiff William R. Wurm, as Appellant raises the issue of his right to a jury trial determination on the facts as presented in this appeal which was determined by the Trial Court as both the Plaintiff's experts did not have based expertise to render expert opinions under Federal Rule of Evidence 702 as being insufficient and not reliable fact as a matter of law for their opinions to be presented to the jury; determining that they were both unreliable and that neither had sufficient expertise to render opinions concerning either of the product's roof design defect advanced by the Plaintiff, nor of its dangerousness and duty to warn after testing revealed its dangerousness; nor as to plaintiff anatomist experts opinions as to the "pattern of injury" being consistent with roof crush injury as opposed to diving injury under Daubert standards and Tenth Circuit Law**

14

## **Standard of Review**

Former Chief Judge Kathryn Vratil, District of Kansas, in *McCoy v. Whirlpool Corp.* No. 02-2064-KHV, Consolidated with: Nos. 02-2229-KHV, 02-2230-KHV, 02-2231-KHV (D. Kan. Jul. 8, 2003) recites the breadth of Kansas products liability law:

"Under Kansas law, the KPLA governs all product liability claims. The underlying purpose of the KPLA is "to consolidate all product liability actions, regardless of theory, into one theory of legal liability. "*Patton v. Hutchinson Wil-Rich Mfg. Co.,* 253 Kan. 741, 756, 861 P.2d 1299, 1311 (1993). To present a prima facie strict liability case, plaintiffs must produce evidence to establish three elements: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left defendants' control. *Jenkins v. Amchem Prods.,* Inc., 256 Kan. 602, 630, 886 P.2d 869, 886 (1994) (quoting *Mays v. CIBA-Geigy Corp.,* 233 Kan. 38, 54, 661 P.2d 348, 360 (1983)).

Under Kansas law, a manufacturer has a duty to use reasonable care in designing its products so that they will be reasonably safe for their intended use. *Deines v. Vermeer Mfg. Co.* 752 F. Supp. 989, 995 (Kan. 1990) (citing *Garst v. Gen. Motors Corp.,* 207 Kan. 2, 19, 484 P.2d 47, 60 (1971)). Kansas has adopted the consumer expectations test as the standard for design defects. See *Delaney v. Deere Co.,* 268 Kan. 769, 772-73, 999 P.2d 930, 934-35 (2000). Kansas courts require "that the product be both defective and unreasonably dangerous." *Jenkins,* 256 Kan. at 630, 886 P.2d at 886. Under Kansas law, a "defective condition" is defined as "a condition which is unreasonably dangerous to the ordinary user" and "unreasonably dangerous" is defined as dangerous when used in the way it is ordinarily used considering the product's characteristics and common usage, and is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics.

Id. at 635, 886 P.2d at 889.

A. Specific Defect

The elements of a product liability claim "may be proven inferentially, by either direct or circumstantial evidence." *Mays,* 233 Kan. at 54, 661 P.2d at 360. Nevertheless,

15

generalized assertions that a product is defective are insufficient; plaintiffs must establish the existence of a specific defect to prevail on a defective product claim. *Jenkins*, 256 Kan. at 635, 886 P.2d at 889. If plaintiffs seek to prove their claim with circumstantial evidence, that evidence "must tend to negate other reasonable causes, or there must be an expert opinion that the product was defective." Id. Indeed, "[b]ecause liability in a products liability action cannot be based on mere speculation, guess or conjecture, the circumstances shown must justify an inference of probability as distinguished from mere possibility." *Mays*, 233 Kan. at 52, 661 P.2d at 359; *Jenkins*, 256 Kan. at 634-35, 886 P.2d at 889 ("either a design defect or a manufacturing defect can be proven by circumstantial evidence")."

In *Miller v. Countrywide Bank, N.A.*, 708 F.3d 704, 707 (6th Cir. 2013) (internal

quotation marks omitted):

> "[A] n abuse of discretion occurs when the District Court makes a clear error of
>
> judgment or exceeds the bounds of permissible choice in the circumstances. This
>
> occurs when a district court relies upon an erroneous conclusion of law, or upon
>
> clearly erroneous findings of fact." (Emphasis supplied.)  And see also: "We
>
> review a district court's ruling on a motion in limine for an abuse of discretion."
>
> *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012). "An
>
> abuse of discretion occurs if the district court relies on clearly erroneous findings
>
> of fact, applies the wrong legal standard, misapplies the correct legal standard
>
> when reaching a conclusion, or makes a clear error of judgment." *Miller v.*
>
> *Countrywide Bank, N.A.*, 708 F.3d 704, 707 (6th Cir. 2013) (internal quotation
>
> marks omitted).

An abuse of discretion occurs when a district court makes "a clear error of judgment or exceed[s] the bounds of permissible choice in the circumstances." *McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1553-54 (10th Cir. 1991). This occurs when a district court relies upon an erroneous conclusion of law or upon clearly erroneous findings of fact. *See Ashby v. McKenna*, 331 F.3d 1148, 1149 (10th Cir. 2003).

### Arguments and Authorities

As above noted:

> "Under Kansas law, the KPLA governs all product liability claims. The underlying purpose of the KPLA is "to consolidate all product liability actions, regardless of theory, into one theory of legal liability. "*Patton v. Hutchinson Wil-Rich Mfg. Co., 253 Kan. 741, 756, 861 P.2d 1299, 1311* (1993). To present a prima facie strict liability case, plaintiffs must produce evidence to establish three elements: (1) the injury resulted from a condition of the product; (2) the condition was an unreasonably dangerous one; and (3) the condition existed at the time it left defendants' control. *Jenkins v. Amchem Prods., Inc., 256 Kan. 602, 630, 886 P.2d 869, 886* (1994) (quoting *Mays v. CIBA-Geigy Corp., 233 Kan. 38, 54, 661 P.2d 348, 360* (1983)).

Under Kansas law, a manufacturer has a duty to use reasonable care in designing its products so that they will be reasonably safe for their intended use. *Deines v. Vermeer Mfg. Co. 752 F. Supp. 989, 995* (Kan. 1990) (citing *Garst v. Gen. Motors Corp., 207 Kan. 2, 19, 484 P.2d 47, 60* (1971)). Kansas has adopted the consumer expectations test as the standard for design defects. *See Delaney v. Deere Co., 268 Kan. 769, 772-73, 999 P.2d 930, 934-35* (2000). Kansas courts require "that the product be both defective and unreasonably dangerous." *Jenkins, 256 Kan. at 630, 886 P.2d at 886*. Under Kansas law, a "defective condition" is defined as "a condition which is unreasonably dangerous to the ordinary user" and "unreasonably dangerous" is defined as

dangerous when used in the way it is ordinarily used considering the product's characteristics and common usage and is dangerous to an extent beyond that which

would be contemplated by the ordinary consumer who purchased it, with the ordinary knowledge common to the community as to its characteristics. Id. at 635, 886 P.2d at 889.

A. Specific Defect

The elements of a product liability claim "may be proven inferentially, by either direct or circumstantial evidence." Mays, 233 Kan. at 54, 661 P.2d at 360. Nevertheless, generalized assertions that a product is defective are insufficient; plaintiffs must establish the existence of a specific defect to prevail on a defective product claim. Jenkins, 256 Kan. at 635, 886 P.2d at 889. If plaintiffs seek to prove their claim with circumstantial evidence, that evidence "must tend to negate other reasonable causes, or there must be an expert opinion that the product was defective." Id. Indeed, "[b]ecause liability in a products liability action cannot be based on mere speculation, guess or conjecture, the circumstances shown must justify an inference of probability as distinguished from mere possibility." Mays, 233 Kan. at 52, 661 P.2d at 359; Jenkins, 256 Kan. at 634-35, 886 P.2d at 889 ("either a design defect or a manufacturing defect can be proven by circumstantial evidence")."

**II. The standard of appellate review of these issues raised on appeal by the Plaintiff/Appellant is that the federal district court abuses its discretion when its ruling is "arbitrary, capricious, whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1223 (10th Cir. 2003) (quotations omitted); and that a determination is made on appeal that specific findings on the record exist supporting its ruling to admit or exclude expert evidence which are required by the federal district court so that reviewing courts on appeal may "determine whether it applied the relevant law and properly performed its gatekeeping function." *Burlington Northern and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013 (10th Cir. 2007).**

**Standard of Review**

An abuse of discretion occurs when a district court makes "a clear error of judgment or exceed[s] the bounds of permissible choice in the circumstances." *McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1553-54 (10th Cir. 1991). This occurs when a district court relies upon an erroneous conclusion of law or upon clearly erroneous findings of fact. *See Ashby v. McKenna*, 331 F.3d 1148, 1149 (10th Cir. 2003).

**Arguments and Authorities**

Plaintiff/Appellant respectfully adopts the arguments and authorities cited by him in his Issue I in support of inclusion of his experts or remand to the U.S. District Court to conduct Daubert Hearings in accordance with the authorities and Record here relied upon by him concerning his appeal.

# VI.
# CONCLUSION

Plaintiffs/Appellants accordingly respectfully request the Panel to reverse the District Court's ruling granting Defendant's Motion for Summary Judgment by default; to vacate the District Court's ruling granting Defendant's Daubert Motions by default, and such

other relief or remedy/sanction determined by this Honorable Appellate Court on this Record of Appeal to be proper, just and warranted in the premises.

## VII.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested in this matter as oral argument as directed due to the current health COVID-19 Pandemic however in such format which may assist the Panel in determining the evidentiary issues and case context in its review on appeal Plaintiff's/Appellant's assertions of error claimed on appeal.


Respectfully submitted,


/s/ Eric Kjorlie
Eric Kjorlie, KS #08065
Attorney at Law
Historic Tinkham Veale Place
827 SW Topeka Blvd.
Topeka, Kansas 66612-1608
(785) 232-6868 (O)
(785) 232-6878 (F)
Attorney for Plaintiffs/Appellants

## COUNSEL'S CERTIFICATE OF SERVICE

I, Eric Kjorlie, Counsel for the Appellants, do hereby certify that a copy of the above and foregoing BRIEF OF APPELLANT was electronically served on this 9th day of October, 2020, in searchable (native) PDF format, by using the Court's CM/ECF system sending notification of such filing to the following:

Theresa Wardon Benz
benz@wtotrial.com


and

Kristen Leigh Ferries
ferries@wtotrial.com

Attorneys for Ford

Further, that seven (7) hard copies of the BRIEF OF APPELLANTS will be served within the five (5) days prescribed from this date of October 9, 2020 or upon the date accepted by the Court upon the Clerk of the Tenth Circuit Court of Appeals pursuant to 10th Cir. R. 30.1(A)(2) by placing same in the U.S. Mail, Express Mail/ Delivery Guaranteed, postage prepaid, which is required to be received within five (5) business days of the electronic submission addressed to:

The Honorable Elizabeth A. Shumaker, Clerk
OFFICE OF THE CLERK
U.S. Court of Appeals for the Tenth Circuit
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257

Two (2) hard copies of the BRIEF OF APPELLANTS will be similarly served by U.S. Mail, postage prepaid and addressed to:

Theresa Wardon Benz
benz@wtotrial.com
Wheeler, Trigg, O'Donnell, LLP
370 17th Street, #4500
Denver, CO 80202

and

Kristen Leigh Ferries
ferries@wtotrial.com
Wheeler, Trigg, O'Donnell, LLP
370 17th Street, #4500
Denver, CO 80202

Attorneys for Ford

s/Eric Kjorlie
ERIC KJORLIE, #08065

## CERTIFICATE OF DIGITAL SUBMISSION

With further certification to the Court that with respect to the foregoing that: (1) all required privacy redactions have been made pursuant to 10th Cir. R. 25.5; (2) that if required to file additional hard copies, that the ECF submission is an exact copy of those documents; and (3) that the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, with Symantec Norton Antivirus Auto-Protect, continuously updated and, according to the program, are free of viruses.

s/Eric Kjorlie
ERIC KJORLIE, #08065
